**Law Office of Lincoln W. Ellis**
Lincoln Ellis, Esq. (SBN 283657)
292 S. La Cienega Blvd., Ste. 207
Beverly Hills, CA 90211
Telephone: (213) 207-6692
Fax:         (855) 701-5136
e-mail: Lincoln.Lawyer.CA@gmail.com

Attorneys for Plaintiff
VERNON CRESWELL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON CRESWELL,<br><br>     Plaintiff,<br><br>  vs.<br><br>CITY OF MONTEBELLO, and DOES 1 through 10, inclusive,<br><br>     Defendants. | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1. **Retaliation in Violation of 42 U.S.C. § 2000e-3(a)**<br>2. **Retaliation in Violation of FEHA**<br>3. **Retaliation in Violation of Cal. Labor Code § 1102.5**<br>4. **Retaliation in Violation of Cal. Govt Code § 3254**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. This Court has jurisdiction over the First Cause of Action (Title VII Retaliation) pursuant to 28 U.S.C. § 1331 (federal question). This Court has jurisdiction over the remaining causes of action under California law pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

2. The City of Montebello and its Fire Department are mistaken in treating every single body of rights for Plaintiff Vernon Creswell as a ceiling, rather than a floor. This violation of rights is being done systematically against Plaintiff, in retaliation for his complaining about being called racist epithets, and complaining about discriminatory and retaliatory promotional exam processes that intentionally exclude him and punish him for being a whistleblower.

3. In California, Firefighters are protected by the Firefighters' Bill of Rights (Cal. Govt. Code Sections 3250-3262). This groundbreaking legislation formalizes a social contract between firefighters and the public they serve. Firefighters risk their lives to help victims of fires, traffic accidents, shootings, medical emergencies, people considering suicide, and the occasional cat stuck in the tree. Firefighters' on the job risk is astronomically higher than almost any other profession, and their life expectancy at retirement is shorter than those in other professions. The California State Legislature, in appreciation for Firefighters' sacrifices, adopted the Firefighters' Bill of Rights to ensure due process protections that most other professions lack. For example, an employer may not inquire about income earned by a Firefighter during their days off work (Section 3258) and a Firefighter's locker at work is not subject to random searches (Section 3259). Further, Firefighters are entitled to sign for receipt of any adverse comments in their personnel file, and have 30 days to contest those

comments.  (Sections 3255-56).  In any interview regarding a potential punitive personnel action, the Firefighter is allowed to record the proceeding, so as to ensure that the Firefighter's words are not taken out of context or misconstrued (Section 3253(g)).

4. The Firefighters Bill of Rights is one perquisite that the public bestows on firefighters in exchange for their service, but not the only one.  With a 48-hour standard shift for the Firefighters in Montebello, which is often extended to 96 hours (due to forced overtime), it is no wonder that the public looks for ways to help out firefighters.  In Montebello, some restaurants offer 50% discounts to fire personnel.  Costco encourages fire personnel to use a faster lane to check out.  Olive Garden delivers an annual Italian feast to the Montebello fire department.  The DMV located in Montebello offers the Fire Department a faster lane to take care of DMV business.  None of these courtesies are codified into formal polices, as far as Plaintiff is aware.  But they are an innocent and harmless way to make the challenge of a forced 96-hour shift of saving lives a little more tolerable, and Firefighters tend to appreciate the gesture.  If a firefighter is in between emergency calls, and has perhaps a couple of hours to get some fresh air, run a couple of errands, and then catch a quick nap before the next call comes, no one can fault the DMV staff for voluntarily deciding that creating a faster line at the DMV for Fire personnel is likely to advance the greater good.

## GENERAL ALLEGATIONS

5. At all times relevant hereto, VERNON CRESWELL ("Plaintiff") was and is a resident of the County of Riverside, State of California, and was and is a competent adult.

6. At all times relevant hereto, Plaintiff was a Fire Captain employed by Defendant City of Montebello ("the City" or "Defendant").  Plaintiff was employed by the City from 2008 until January 5, 2021, when his employment was unlawfully terminated by the City.

7. Plaintiff is informed and believes and thereon alleges that, at all times relevant herein, the City was a public entity located in the County of Los Angeles, California.  On information and belief, Plaintiff alleges that the Montebello Fire Department ("the Department") is an administrative agency of the City.

8. Defendants DOES 1 – 10, and each of them, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names, until such time as those names are ascertained.

9. Plaintiff alleges on information and belief that each DOE Defendant was and is in some matter liable to Plaintiff for the injuries and conduct alleged herein, and that Plaintiff's damages were and are proximately caused by their conduct.

10. On information and belief, Plaintiff alleges that all relevant times herein the Defendants, and each of them, were the agents, servants and/or employees or ostensible agents, servants and/or employees of each other Defendant.  As such, the Defendants were acting within the course and scope of said actual or ostensible agency or employment – except on those occasions when Defendants were acting as principals, in which case, said Defendants, and each of them, were negligent in the selection, hiring, and use of the other Defendants.

11. Plaintiff further alleges, on information and belief, that at all times relevant herein, Defendants, and each of them, acted in concert and in furtherance of the interests of each other Defendant.

12.     This court is the proper court because Defendant City is located in the County of Los Angeles, and Plaintiff is employed in the County of Los Angeles, and many or all of the facts herein alleged took place in the County of Los Angeles.

13.     Plaintiff has complied or will comply with any applicable claims statutes and/or administrative or internal remedies and/or grievance procedures, or is excused from complying therewith.  In the alternative, the money damages are incidental to Plaintiff's Firefighter Bill of Rights ("FBOR") Injunctive Relief Claims.

## FACTUAL ALLEGATIONS

14.     Plaintiff is an African-American, who was employed as Fire Captain by the City until his unlawful termination on or about January 5, 2021.

15.     In 2013, Plaintiff filed a lawsuit for race harassment under the Fair Employment and Housing Act ("FEHA").  Plaintiff alleged, among other things, that his supervisor was referring to Plaintiff as a "ni**er"[1] based on his African-American Race.

16.     In June of 2015, Plaintiff prevailed in his race harassment claim at trial and was awarded damages by a jury.

17.     In or around, 2017, Plaintiff filed a lawsuit under FEHA for retaliation, based on the first lawsuit.  Plaintiff applied for Battalion Chief Position and received scores on the simulation exam that were biased, discriminatory and/or retaliatory and implausibly low.  Plaintiff

_____

[1] * = g.

had overhead Department leadership saying things evincing retaliatory and discriminatory animus along the lines of Plaintiff "had stolen money from the City" (by winning the prior lawsuit), Plaintiff "just can't be a Battalion Chief in Montebello"; Plaintiff and/or other minorities "cheat or attempt to cheat" on promotional exams.

18.     As a result of the City's unlawful discrimination and/or retaliation, Plaintiff was denied a promotion or otherwise suffered a/an adverse employment action(s) in 2017.

19.     A jury trial is presently pending in that California State court case from 2017.

20.     On or about August 11, the City accused Plaintiff of alleged wrongdoing while meeting another Fire Department Employee to show the employee which line at the Montebello DMV had traditionally allowed Montebello Fire Department staff to conduct personal and/or fire department-related business in an expedited manner.  The Fire Department staff were even occasionally invited to socialize with the DMV staff in order to learn about the expedited line and Fire Department Staff were encouraged to use it.

21.     The expedited DMV line had always been allowed and encouraged by Fire Department leadership, until Mr. Creswell was singled out for retaliation.  Given that fire department staff often have forced-overtime shifts of 96 hours (2 consecutive 48 hours shifts) or even more, the reality is that Fire Department staff need to run errands such as going to the bank for personal matters, going to the DMV within the City of Montebello for personal or work matters, going out to lunch or dinner to get a break from "cabin fever" from being at the fire station, all while being on "stand-by", i.e., in uniform, close to their fire station, with their Fire Department radio "on" and with the fire truck and

co-workers, so that they are ready to deploy if there is an emergency call.

22.     Apparently recognizing the benefit to the public of having Fire Department staff who were fresh and ready to save lives, rather than exhausted from waiting in line for hours at the DMV, the Montebello DMV had permitted and encouraged Fire Department staff to use an expedited window.  No written or verbal policy was provided to Plaintiff – either by the DMV or the City – which specified which Fire Department staff could use the expedited line, or for what types of matters the expedited line was available.  City and/or Fire Department leadership had also encouraged the practice of using the expedited DMV line and prior to this incident had made no mention of which types of matters were appropriate to resolve at the expedited DMV line while at work (but on "stand-by" and ready to deploy if needed).

23.     Mr. Creswell did not know if the Fire Department staff person who requested assistance in locating the expedited line at the DMV was handling a personal or work-related matter.

24.     During the entire period of approximately 10 minutes that Mr. Creswell was near the Montebello DMV, he was near to the fire truck and his crew, and ready to deploy should a call come in.

25.     The Fire Department staff-person who requested assistance at the Montebello DMV had e-mailed several supervisors, including Captains and at least one Battalion Chief, and none of them objected to the request as wrongful in the approximately three-or-four hours between when the request was sent and when Mr. Creswell responded to it.

26.     If responding to the request from a Fire Department employee for DMV assistance had been a clear violation of any policy so as to

warrant discipline, one would reasonably expect the supervisors to intervene and discourage responding to the request for DMV assistance during the approximately three-to-four-hour time period mentioned herein.

27.     Plaintiff further complained of other unlawful conduct, including race discrimination and retaliation for complaining about race discrimination or harassment in or about September 2020, when Mr. Creswell wrote the following correspondence (or a version of it) to Montebello City Council members, Montebello Mayor, the City Manager, City Human Resources Director and others:

> *"IT'S TIME TO END SYSTEMIC RACISM AND RETALIATION IN THE MONTEBELLO FIRE DEPARTMENT*
>
> *As people across the State of California have their lives upended by fires that are encroaching on residential areas, this is a good time to ask what it's like to actually work as a firefighter.  Too often, the "old boys network" inside fire departments hinders newcomers' ability to not only put out fires, but also to help the public in many other ways.*
>
> *I have proudly been a Firefighter/Paramedic for 26 years, including 12 of those years with the City of Montebello. I love my chosen profession serving the public. I love the fact that I have been able to cherish a career helping hundreds if not thousands of people over the years.*
>
> *As an African-American Firefighter, I have always sought to improve the Montebello Fire Department and make it more*

*welcoming to minorities including women, while at the same time respecting my coworkers of different backgrounds. I am not someone whose first instinct is to sue. I have let many problematic remarks by fire department employees slide, so as to try to get along with my coworkers and supervisors.*

*I finally sued the City of Montebello for the first time in 2013 after a series of incidents, the worst of which included being called the "N-word", "Compton Gang Banger", and "Mush Mouth" from the television show Fat Albert. A jury agreed that I had been subject to racial harassment and retaliation.*

*I sued the City of Montebello again for retaliation in 2017, after I applied for promotion to Battalion Chief and was unfairly denied. Some of the department leadership made remarks such as "If promoted to Battalion Chief, I would destroy the organization" and "minorities always cheat on exams," indicating that they would never give me a fair chance at the promotion because of my prior complaints of race discrimination, harassment, and retaliation.*

*The 2017 case has not yet been heard by a jury. In settlement conferences, the City has insisted that I leave the fire department and retire (15 years early) as a condition of settlement. I feel the City wants to push me out for having the courage to assert my legal rights. I have made it very clear on several occasions that I do not want to leave the department and give up my career. I want to be treated*

*fairly, included in the decision making that helps with the growth and a more racially diverse department, and continue to do my job helping the public.*

*Recently I was notified of an "investigation" into my on-the-job actions, which I feel are unwarranted and is completely retaliatory.  I won't go into details since the so-called "investigation" is ongoing and I'm prohibited from discussing the details.*

*If someone wants to do a true investigation into real misconduct, they should start at the top.  It's time for the Montebello City Council or the California Attorney General to look into a pattern of discrimination and retaliation, and other misconduct within the Montebello Fire Department that is perpetuated by the department leadership.  If the City of Montebello or the Fire Department wants to truly clean up its act and change the culture, it will need to take a new approach with independent oversight. The leadership current team is not up to the job and has enabled or perpetuated the culture of harassment, discrimination, and retaliation against those who stand up for what is right.*

*Recently I was told by one of the Fire Department leaders that the City Manager Mr. Bobadilla wanted to have lunch with me and really get to know me as a person, and had given him my cell number.  This turned out to be a bait and switch.  Instead of a friendly phone call that I expected, the*

*only communication from the City has been settlement offers contingent on me leaving the department, 15 years before I had planned to.*

*On several occasions I reached out to the Fire department leadership with the hope to collaboratively work towards expanding the candidate pool in an effort to hire qualified African-American Chief Officers in some key leadership roles within the fire department.  My efforts have gone unreciprocated, and none of the current leadership seems to be interested in building a department which reflects the community we serve.*

*Further, current Montebello Fire Department leadership has engaged in dubious behaviors such as ordering an employee to take a city vehicle out of the city to pick up expensive watches (for leaders' personal use) while on duty.*

*On another occasion current Montebello Fire Department leadership ordered a fire engine while on duty to go out of the city limits and into East los Angeles to attend a birthday parade.*

*One of the members of the Montebello Fire Department leadership boasted to me (back when we were friendly) that he could slow down the workers' compensation processing for firefighters who he did not like.  Indeed, it is suspicious that lately I have not been able to obtain workers' comp*

*treatment that I need and am entitled to.*

*If Montebello City Council or the California Attorney General wants to investigate this misconduct and pattern of systemic racial bias and retaliation, they should interview myself and other firefighters under the auspices of a "truth commission" and a guarantee of absolutely no retaliation.   This is essential to bringing about transparency and equality that is severely needed.*

*All I want is to be able to do my job, serve the public, and have a fair shot at promotions, without being subjected to systemic race-based harassment, retaliation and discrimination.  The Fire Department and City Staff seem to view me as a problem for speaking up, rather than seeing me as a part of the solution.  It's time that whistleblowers like me be thanked for bringing forward important issues to see the light of day, rather than repeatedly and unfairly punished.*

*Respectfully,*

*Vernon Creswell*
*Montebello Fire Department Captain"*

28.     On or about December 28, 2022, Plaintiff filed a lawsuit in Los Angeles County Superior Court against the City, alleging violations of FEHA (disability discrimination for failure to accommodate Plaintiff's disability leave; and retaliation for Plaintiff's complaints of racism and FEHA retaliation) and the Firefighters' Bill of Rights.

29.     Plaintiff's employment was terminated by the City on or about January 5, 2021.  The termination was at least substantially motivated by Plaintiff having alleged race discrimination, harassment, and retaliation in Mr. Creswell's previous civil lawsuits, mentioned above, and the related complaints (DFEH charges as well as verbal and/or written complaints which opposed race discrimination, race harassment, and retaliation for complaining about race discrimination or race harassment), and Plaintiff's allegations of FBOR violations, and Plaintiff's allegations of unlawful (non-FEHA) activity by Fire Department leadership.

30.     Indeed, Montebello Fire Chief Fernando Pelaez admitted his unlawful retaliatory animus.  When asked about Plaintiff's other lawsuit (for FEHA violations), Chief Pelaez told a colleague that Mr. Creswell "will be a short timer. We want to get him out of here. He is a pain in my butt" and that Mr. Creswell "would never be a Battalion Chief in Montebello" or words to that effect.

31.     Montebello Fire Chief Pelaez told another colleague that he was "upset" or "pissed off" about Mr. Creswell suing the City for FEHA violations.

32.     Plaintiff has exhausted his administrative remedies.  Plaintiff received a right to sue letter from the DFEH on or about February 14, 2022.  Plaintiff received a right to sue letter from the EEOC on or about April 14, 2022.  Plaintiff filed a claim for Non-FEHA damages (i.e., retaliation in violation for non-FEHA complaints of unlawful activity) pursuant to the California Government Tort Claims Act on or about March 5, 2021, and did not receive a response from the City, thus exhausting the California Government Tort Claims Act.

33.     Plaintiff attempted to use the City's purported civil service

commission appeal process to exhaust any cause of action which may arguably have any administrative exhaustion requirement not satisfied by the DFEH, EEOC, and/or California Government Tort Claims Act procedures.  Plaintiff filed one civil service appeal on or about November 2, 2020, related to the City's prohibited use of a disciplinary report by third-party investigator Keith Kilmer.  Plaintiff filed another civil service appeal alleging non-FEHA retaliation as a motive for the termination of his employment, on or about January 20, 2021.  As a member of the "fire public safety bargaining unit" (Montebello Municipal Code § 2.60.220(a)) Plaintiff was entitled to have both appeals heard quickly as they both related to "disciplinary action, demotion, or dismissal."  Indeed, "the hearings shall be held within twenty days after the request for a hearing is filed by the employee."  Montebello Municipal Code § 2.60.220(c).

34.     Instead, almost two years later, and in violation of its own laws, the City has still not convened either of Plaintiff's two requested civil service commission hearings.  At the same time, the City's website has consistently published provably false information, stating repeatedly (and falsely) that the City's personnel advisory commission / civil service commission monthly meeting "is hereby canceled as there are no items for consideration at that time." [2]

35.     Furthermore, the City declined to confirm if it would issue subpoenas of witnesses for any eventual civil service commission hearing.

36.     Thus, any requirement that Plaintiff further exhaust administrative

_____

[2] See https://www.cityofmontebello.com/department/human-resources/civil-service-commission.html, last accessed May 8, 2022.

remedies before the Civil Service Commission is excused because "[t]he [administrative remedy exhaustion] doctrine does not apply when the administrative remedy is inadequate, ... is too slow to be effective, ... or when irreparable harm would result by requiring exhaustion of administrative remedies before seeking judicial relief, ... or when it is clear that seeking administrative remedies would be futile." *City of San Jose v. Operating Engineers Local Union No. 3*, 49 Cal.4th 597, 609 (2010).

37.     Here, the administrative remedy is inadequate because a civil service hearing would not – based on the information to provided to Plaintiff by the City – include the right to subpoena witnesses.  Also, on information and belief, the civil service commission would not include a provision for attorneys' fees, back pay, and emotional distress damages, unlike the causes of action in this case.

38.     The purported civil service commission is too slow because the City needed to provide the hearings within 20 business days of them being requested, (or in the alternative, as soon as practicable). Instead, the City has delayed almost two years, and the two civil service hearings have still not happened.  Meanwhile, the City has misrepresented the truth in public documents, claiming that the Civil Service commission has "no items for consideration" for most of the past two years.

39.     Irreparable harm would result from requiring further administrative exhaustion, since Plaintiff has looming statutes of limitations for all of his claims, and Plaintiff needs immediate intervention from the Court so that he can be re-instated before any further promotional opportunities come and go, or before Plaintiff loses any further training opportunities that keep him sharp and up to speed with current Firefighting and

paramedic training.

40.     And further exhaustion of the civil service commission would be futile because the City has shown bad faith throughout, as evidenced by its false claims that there were "no items for consideration", even though Plaintiff's items have been pending for almost two years.

41.     The FBOR does not contain an administrative exhaustion requirement.  Indeed, it permits immediate injunctive relief by the Courts.

42.     The actions complained of herein were done with malice, entitling Plaintiff to statutory damages and other relief under the Firefighters' Bill of Rights.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION

Retaliation in Violation of Title VII

Plaintiff vs. All Defendants

43.     Plaintiff incorporates the preceding paragraphs by reference.

44.     The City of Montebello is, and at relevant times was, an entity covered by Title VII, 42 U.S.C. § 2000e-3(a).

45.     Plaintiff participated in activity protected by federal law: filing formal and informal complaints of race discrimination, and retaliation for complaining of race discrimination.

46.     The City subjected Plaintiff to an adverse employment action – termination of employment.

47.     Plaintiff was subjected to the termination of employment because of his participation in protected complaints of race discrimination and/or retaliation for complaining about race discrimination.

48.     As a result of the aforementioned unlawful conduct, Plaintiff has suffered and will continue to suffer economic damages including,

wages, earnings, overtime, earning capacity, pension and other benefits in an amount to be proven at trial.

49.     As a result of the aforementioned unlawful conduct, Plaintiff has suffered and will continue to suffer emotional distress, anguish, grief, humiliation, and other non-economic damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## Retaliation in Violation of FEHA
## Plaintiff vs. All Defendants

50.     Plaintiff repeats and re-alleges the preceding paragraphs as if set forth herein.

51.     Plaintiff has filed a DFEH charge and obtained a right to sue.

52.     In retaliation for opposing practices prohibited by FEHA, the Defendants, and each of them, subjected Plaintiff to one or more adverse employment actions from January 5, 2021 to present, as described herein.

53.     Plaintiff's FEHA-protected activities were a substantial motivating factor in Defendants' adverse employment actions.

54.     The actions and conduct of Defendants, constituted unlawful retaliation pursuant to Cal. Govt. Code § 12940(h).

55.     As a result of the aforementioned unlawful conduct, Plaintiff has suffered and will continue to suffer economic damages including, wages, earnings, overtime, earning capacity, pension and other benefits in an amount to be proven at trial.

56.     As a result of the aforementioned unlawful conduct, Plaintiff has suffered and will continue to suffer emotional distress, anguish, grief, humiliation, and other non-economic damages in an amount to be

proven at trial.

# THIRD CAUSE OF ACTION

## Retaliation in Violation of Cal. Labor Code Section 1102.5

## Plaintiff vs. All Defendants

57.    Plaintiff incorporates the preceding paragraphs by reference.

58.    Plaintiff disclosed to the City's leadership unlawful non-FEHA activity, such as the City's Fire Department leadership sending employees out of the City to pick up expensive watches for personal use, on work time, and holding up workers' compensation claims of disfavored Fire Department employees.

59.    Plaintiff reasonably believed the complained-of conduct was unlawful.

60.    Plaintiff's employment was terminated by the City.

61.    Plaintiff's protected complaints were a contributing factor in the City's decision to terminate Plaintiff's employment.

62.    Plaintiff was harmed.

63.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

64.    As a result of the aforementioned unlawful conduct, Plaintiff has suffered and will continue to suffer economic damages including, wages, earnings, overtime, earning capacity, pension and other benefits in an amount to be proven at trial.

65.    As a result of the aforementioned unlawful conduct, Plaintiff has suffered and will continue to suffer emotional distress, anguish, grief, humiliation, and other non-economic damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### Retaliation in Violation of Cal. Govt. Code Section 3254

### Plaintiff vs. All Defendants

66.     Plaintiff incorporates the preceding paragraphs by reference.

67.     At relevant times herein, Plaintiff was a firefighter protected by Cal. Govt. Code Section 3250 et seq. (Firefighters Bill of Rights, "FBOR").

68.     Plaintiff complained of violations of the FBOR on or about December 28, 2020, in his California State Court civil case.

69.     In retaliation for Plaintiff's protected complaints, the City terminated Plaintiff's employment.

70.     Plaintiff's protected complaints were a contributing factor in the City's decision to terminate Plaintiff's employment.

71.     Plaintiff was harmed.

72.     Defendants' conduct was a substantial factor in causing Plaintiff's harm.

73.     As a result of the aforementioned unlawful conduct, Plaintiff has suffered and will continue to suffer economic damages including, wages, earnings, overtime, earning capacity, pension and other benefits in an amount to be proven at trial.

74.     As a result of the aforementioned unlawful conduct, Plaintiff has suffered and will continue to suffer emotional distress, anguish, grief, humiliation, and other non-economic damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     For general damages to compensate Plaintiff for his past,

present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

     B.    For compensatory damages;

     C.    For all applicable injunctive relief as allowed by law;

     D.    For an award of interest, including prejudgment interest, at the legal rate;

     E.    For an award of attorney fees as allowed by law (e.g. Title VII, Code of Civil Procedure Section and 1021.5 and Govt. Code 12940 et seq.; 3260(d).);

     F.    Statutory damages;

     G.    For costs of suit incurred;

     H.    For such other and further relief as this Court deems appropriate.

     I.    To the extent any of these are considered "special damages" pursuant to Rule 9, Plaintiff estimates that his lost income and benefits is $250,000 per year from 2021-2034 (when he will turn 65 and be of retirement age) for a total of $3,250,000 in lost wages.  Of course, if Plaintiff is reinstated, this number (for lost wages) will be much smaller.  Plaintiff estimates his emotional distress at $2,000,000.  Plaintiff believes tax offset and lost pension benefits are subject to expert testimony.

Dated:  May 8, 2022       LAW OFFICES OF LINCOLN W. ELLIS

                By:   /S/ Lincoln W. Ellis

                Lincoln Ellis, Esq.
                Attorneys for Plaintiff
                VERNON CRESWELL

**Jury Trial Demand**

Plaintiff demands a jury trial on all claims and causes of action with respect to which he has a right to a jury trial.

Dated:  May 8, 2022          LAW OFFICES OF LINCOLN W. ELLIS

                             By:   /S/ Lincoln W. Ellis

                                   Lincoln Ellis, Esq.
                                   Attorneys for Plaintiff
                                   VERNON CRESWELL